E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-5590-GHK (FFMx) | | Date | October 28, 2015 |
|---|---|---|---|---|
| Title | *Emma Viera v. Bank of America, N.A., et al.* | | | |

| Presiding: The Honorable | **GEORGE H. KING, CHIEF U.S. DISTRICT JUDGE** | |
|---|---|---|
| Beatrice Herrera | N/A | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**      **(In Chambers) Order re:** Motion to Dismiss Complaint [Dkt. 25]

This matter is before us on Defendants' Motion to Dismiss ("Motion"). We have considered the papers filed in support of and in opposition to the Motion and deem this matter appropriate for resolution without oral argument. L.R. 7-15. Accordingly, we rule as follows:

**I.      Background**

On June 10, 2015, Plaintiff Emma Viera ("Plaintiff") filed a class action Complaint against Defendants Bank of America, N.A. ("Bank of America"), National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), and American International Group, Inc. ("AIG") (collectively, "Defendants"). [*See* Dkt. 10-2.] The Complaint asserted the following causes of action: (1) Violation of False Advertising Law (Cal. Bus. & Prof. Code § 17500) ("FAL"); (2) Violation of Consumer Legal Remedies Act (Cal. Civ. Code § 1750) ("CLRA"); (3)-(5) Three violations of California Business and Professions Code § 17200 ("UCL"); (6) Fraud; and (7) Negligent Misrepresentation. [*Id.*] These claims stem from allegedly misleading statements in an insurance policy solicitation (the "Solicitation") that prompted Plaintiff to purchase an insurance policy (the "Policy") based on an incorrect interpretation of the Policy's coverage. Defendants removed this action on July 23, 2015. [Dkt. 1.]

**A.      The Solicitation**

Plaintiff received the Solicitation from Bank of America in March 2009. (Compl. ¶ 25.) The Solicitation advertised an insurance policy that purported to offer coverage for a person who becomes "permanently and totally disabled due to a covered accident." (*Id.* ¶¶ 25-27.) The Solicitation was two-sided. (*Id.* ¶ 25.) The front side provided background on the Policy and gave a general sales pitch for the Policy, posing rhetorical questions such as: (1) "If you become totally and permanently disabled, would you be able to pay your mortgage, auto loan or other financial obligations?"; (2) "If you experience an accidental disability and you are unable to work, how would it affect your finances?"; and (3) "If an accident leaves you permanently disabled and unable to work, what would you do?" (*Id.*) The reverse side of the Solicitation defined "Permanent Total Disability," stating:

---

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-5590-GHK (FFMx) | Date | October 28, 2015 |
|---|---|---|---|

| Title | *Emma Viera v. Bank of America, N.A., et al.* |
|---|---|

> Permanent Total Disability: means an insured person has suffered any of the following: the loss of both hands, both feet, one hand and one foot, sight or both eyes, is permanently unable to perform the material and substantial duties of any occupation for which he or she is qualified by reason of education, experience, or training, and is under the supervision of a Physician unless that insured person has reached his or her maximum point of recovery.

(*Id.* ¶ 26.)

According to the Complaint, Plaintiff interpreted this definition to mean that the Policy covered an injury if the injured person:

> (1) suffers dismemberment of the hands, feet, or eyes; **or**

> (2) is permanently unable to perform the material and substantial duties of any occupation for which he or she is qualified by reason of education, experience, or training; **and**

> (3) is under the supervision of a Physician unless that insured person has reached his maximum point of recovery.

(*Id.* ¶ 27 (emphasis in original).)

The Solicitation's reverse side further provided that "[y]ou'll have 30 days to review your insurance documents," and to "[s]imply return them for a full refund of any premiums and fees you may have paid if you're not 100% satisfied with the terms of this coverage." (*Id.*, Ex. A.) The Solicitation also stated, "This is only a brief description of the coverage available under the Policy . . . . If there is any conflict between the contents of this document and the Policy, the Policy shall govern." (*Id.*)

### B.     The Policy Documents

Based on the Solicitation's representations and Plaintiff's "understanding of the Solicitation's definition of Permanent Total Disability," Plaintiff applied for the Policy in April 2009. (*Id.* ¶ 30.) "Plaintiff would not have applied and paid for the Policy if she knew coverage was limited to dismemberment and paralysis." (*Id.*) On May 2009, Bank of America sent a letter informing Plaintiff that she was enrolled in the Policy, and Plaintiff's first premium payment for the Policy was "automatically debited from her [Bank of America] checking account at that time." (*Id.* ¶ 31.) Enclosed in this letter was a set of documents describing the Policy (the "Policy Documents") from National Union which "purported to govern the terms and scope of coverage" of the Policy. (*Id.*) The Policy Documents set forth a definition of "Permanently Totally Disabled / Permanent Total Disability" that "imposed a minor linguistic change [from the Solicitation] that fundamentally altered the scope of [the Policy's] coverage," providing:

> *Permanently Totally Disabled / Permanent Total Disability* – As used in this benefit means:

> (1) That the Insured has suffered any of the following:

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-5590-GHK (FFMx) | | Date | October 28, 2015 |
|---|---|---|---|---|
| Title | *Emma Viera v. Bank of America, N.A., et al.* | | | |

> (a) loss of both hands or feet; or
> (b) loss of one hand and one foot; or
> (c) loss of sight in both eyes; or
> (d) Hemiplegia; or
> (e) Paraplegia; or
> (f) Quadriplegia

> **and**

> (2) The Insured is permanently unable to perform the material and substantial duties of any occupation for which he or she is qualified by reason of education, experience or training; and

> (3) The Insured requires the supervision of a Physician, unless the Insured has reached the maximum point of recovery.

(*Id.* ¶ 32 (emphasis in Complaint, not in Policy Documents).)  Thus, the Policy imposed "three requirements to trigger coverage," not two as Plaintiff believed from her interpretation of the Solicitation.  (*Id.* ¶ 35.)

### C.       Plaintiff's Attempt to Recover Under the Policy as Alleged in the Complaint

Plaintiff timely paid her premium payments up to and including the date of filing the Complaint. (*Id.* ¶ 36.)  In July 2009, Plaintiff sustained a serious back injury at work and received treatment from a physician who ultimately determined that the injuries rendered Plaintiff unable to work.  (*Id.* ¶ 37.)  In November 2009, Plaintiff sent a letter to National Union seeking to assert a claim under the Policy based on this injury.  (*Id.* ¶ 38.)  National Union did not respond.  (*Id.*)

In December 2009, Plaintiff called National Union to again attempt to file a claim under the policy.  (*Id.* ¶ 39.)  Plaintiff spoke to a National Union representative who held himself out as knowledgeable about the Policy.  (*Id.*)  The representative did not tell Plaintiff during this call that Plaintiff's back injury was not a qualifying injury under the claim.  (*Id.*)  Instead, the representative erroneously told Plaintiff that being under the care of just a licensed physician was insufficient for purposes of the Policy's coverage, and that the Policy required Plaintiff to be under the care of a state physician and to be pronounced disabled by the State of California via workers compensation proceedings or the Social Security Administration.  (*Id.*)

Between January and March of 2010, Plaintiff attempted to contact National Union to "clarify the requirements of the policy."  (*Id.* ¶ 40.)  In spite of "spending hours navigating through a labyrinth of automated phone trees, multiple transfers, hours of time spent on hold, and disconnections," Plaintiff was unable to speak with a representative about the Policy.  (*Id.*)  In August of 2010, Plaintiff initiated workers compensation and social security proceedings.  (*Id.* ¶ 41.)  Because of the false representations of the National Union representative, Plaintiff took no further action to claim Policy benefits.  (*Id.* ¶ 42.)

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-5590-GHK (FFMx) | Date | October 28, 2015 |
|---|---|---|---|

| Title | *Emma Viera v. Bank of America, N.A., et al.* |
|---|---|

In July 2013, Plaintiff spoke with an attorney about her claim attempts and, on July 8, 2013, submitted a letter to National Union to inquire about her claim for benefits under the Policy. (*Id.* ¶ 43.) Plaintiff received no response. (*Id.*) On July 18, 2013, Plaintiff, through counsel, submitted another letter to National Union concerning her claim for benefits, but again received no response. (*Id.* ¶ 44.) On August 2, 2013, Plaintiff sent another letter to National Union. (*Id.* ¶ 45.) Plaintiff finally received a response letter from National Union, which was backdated to July 24, 2013, that acknowledged receipt of Plaintiff's inquiries. (*Id.*)

On October 1, 2013, Plaintiff submitted a claim form under the Policy. (*Id.* ¶ 46.) On July 20, 2014, Plaintiff received a letter from AIG in response to her claim. (*Id.* ¶ 47.) The letter denied Plaintiff's claim under the Policy, stating that "there is no indication you suffered the loss of your hands, or feet, or hearing," and that "[t]here is also no indication you suffered the complete and irreversible paralysis of the upper and lower limbs on the side of the body." (*Id.* ¶ 47.) Plaintiff asserts that "[u]ntil this denial, [she] was unaware the Policy did not provide coverage in a manner consistent with the Solicitation." (*Id.* ¶ 48.)

## II.     Discussion

### A.     Legal Standard

To state a claim for relief, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1). To survive a motion to dismiss for failure to state a claim upon which relief can be granted, a complaint must set forth "more than labels and conclusions," and a "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain factual allegations sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a complaint alleges facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.*

In considering a motion to dismiss, we must accept the complaint's allegations as true and construe them in a light most favorable to the plaintiff. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). We need not accept as true, however, legal conclusions "cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

### B.     Analysis

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-5590-GHK (FFMx) | Date | October 28, 2015 |
|---|---|---|---|
| Title | *Emma Viera v. Bank of America, N.A., et al.* | | |

Defendants argue that "[t]he allegations of the complaint demonstrate that the applicable statutes of limitations have expired." (Mot. at 5.) "When a ground for objection to a complaint, such as the statute of limitations, appears on its face or from matters of which the court may or must take judicial notice, a [dismissal] on that ground is proper." *Cochran v. Cochran*, 56 Cal. App. 4th 1115, 1120 (1997).

The statute of limitation for Plaintiff's (1) FAL claim is three years, *see* Cal. Code Civ. Proc § 338(a); (2) CLRA claim is three years, *see* Cal. Civ. Code § 1783; (3) UCL claims is four years, *see* Cal. Bus. & Prof. Code § 17208; and (4) fraud and negligent misrepresentation claims is three years, *see* Cal. Code Civ. Proc. § 338(d). Thus, the longest statute of limitations period for any of Plaintiff's claims is four years.

"The limitations period commences when the cause of action accrues." *E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal. App. 4th 1308, 1317 (2007). "[A] cause of action accrues at the time when the cause of action is complete with all of its elements." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005) (internal quotation marks omitted). The Complaint states that Plaintiff received the allegedly deceptive Solicitation in March 2009, (Compl. ¶¶ 25-27), that the Solicitation prompted Plaintiff to purchase the Policy in April 2009, (*id.* ¶ 30), and that Plaintiff received the Policy Documents in May 2009, (*id.* ¶ 31). Defendants argue that "these allegations give rise to all of Plaintiff's claims," as "it is clear that all elements of each claim were complete as of May 2009." (Mot. at 6 (emphasis omitted).) Because May 2009 is over six years prior to June 10, 2015—when Plaintiff filed her lawsuit—Defendants assert that "the running of the statute of limitations is apparent on the face of the complaint," and we should thus "dismiss the complaint as time-barred." (*Id.* at 6 (internal quotation marks omitted).)

Plaintiff does not dispute this argument, instead asserting that "two exceptions to the general rule for defining accrual of claims operate to toll the generally applicable limitations periods: [1] the delayed discovery rule and [2] the doctrine of fraudulent concealment." (Opp'n at 19-20.) Thus, Plaintiff concedes that the statute of limitations bars her claims unless one of these exceptions applies. "Even at the pleading stage," Plaintiff has the burden of showing that her claims "survive based on . . . nonstatutory exceptions to the basic limitations period." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1197 (2013).

**1.      Delayed Discovery Rule**

The delayed discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action."[1] *Fox*, 35 Cal. 4th at 807. "A plaintiff whose complaint

---

[1] Although neither party raises the issue, the Ninth Circuit has reasoned that the delayed discovery rule does not apply to UCL claims. *See Karl Storz Endoscopy Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 857 (9th Cir. 2002) (stating that a plaintiff's UCL claims were "subject to a four-year statute of limitations which began to run on the date the cause of action accrued, not on the date of discovery"). The Ninth Circuit's interpretation of California law is "binding in the absence of any subsequent indication from the California courts that [its] interpretation [is] incorrect." *Jones-Hamilton*

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-5590-GHK (FFMx) | Date | October 28, 2015 |
|---|---|---|---|

| Title | *Emma Viera v. Bank of America, N.A., et al.* |
|---|---|

shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *E-Fab, Inc.*, 153 Cal. App. 4th at 1319 (internal quotation marks omitted). "In that case, the statute of limitations for that cause of action will be tolled until such time as a reasonable investigation would have revealed its factual basis." *Fox*, 35 Cal. 4th at 803.

The Complaint alleges that (1) "[o]n or about July 20, 2014, Plaintiff received a letter from AIG in response to her claim under the Policy," (Compl. ¶ 47.); (2) in this letter "AIG denied Plaintiff's claim under the policy" because her injury did not invoke the Policy's coverage, (*id.*); and (3) "[u]ntil this denial, Plaintiff was unaware the Policy did not provide coverage in a manner consistent with the Solicitation," (*id.* ¶ 48).

Defendants argue, however, that Plaintiff insufficiently pleaded facts showing Plaintiff's inability to have made earlier discovery despite reasonable diligence. "[T]he limitations period begins once the plaintiff has notice or information of circumstances to put a reasonable person on inquiry." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110-11 (1988) (internal quotation marks and citations omitted); *see also Norget v. Upjohn Co.*, 21 Cal. 4th 383, 398 (1999) (stating that a plaintiff "has reason to discover the cause of action when he has reason at least to suspect a factual basis for its elements"). "A plaintiff need not be aware of the specific 'facts' necessary to establish the claim." *Jolly*, 44 Cal. 3d at 1111. "So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." *Id.* The burden is on the plaintiff to show diligence, and conclusory

---

*Co. v. Beazer Materials & Servs., Inc.*, 973 F.2d 688, 696 n.4 (9th Cir. 1992). In *Aryeh v. Canon Business Solutions, Inc.*, the California Supreme Court held that the delayed discovery rule does apply to UCL claims, stating, "[W]e conclude the UCL is governed by common law accrual rules to the same extent as any other statute . . . . [E]xceptions to that rule apply precisely to the extent the preconditions for their application are met, as would be true under any other statute." 55 Cal. 4th 1185, 1196 (2013). "*Aryeh* clearly indicates that *Karl Storz Endoscopy* incorrectly held the delayed discovery rule does not apply to UCL claims." *Herremans v. BMW of N. Am., LLC*, 2014 WL 5017843, at *3 n.37 (C.D. Cal. Oct. 3, 2014). Thus, in spite of this contrary Ninth Circuit authority, the delayed discovery rule is applicable to Plaintiff's UCL claims.

---

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-5590-GHK (FFMx) | Date | October 28, 2015 |
|---|---|---|---|

| Title | *Emma Viera v. Bank of America, N.A., et al.* |
|---|---|

allegations will not withstand [dismissal]."[2]  *E-Fab, Inc.*, 153 Cal. App. 4th at 1319.  Here, Defendants assert that Plaintiff was put on notice once she received the Policy Documents.

The Complaint plainly states that Plaintiff received—in May 2009—written Policy Documents that described the terms and scope of coverage of the Policy.  (Compl. ¶¶ 31-32.)  Plaintiff does not argue that these Policy Documents misstate the Policy's coverage, only that the Solicitation's representations concerning the Policy's coverage allegedly differed from the actual coverage.  Thus, the Complaint affirmatively shows that, in May 2009, Plaintiff had documents in her possession that accurately and fully described the coverage of the Policy.  Reasonable diligence would require Plaintiff to at least attempt to read the Policy Documents, but the Complaint does not allege that Plaintiff at any point made such an attempt.

Had Plaintiff simply read the Policy Documents upon receiving them in May 2009, she would have discovered—or at least been suspicious about—the allegedly misleading nature of the Solicitation. *See Iorio v. Allianz Life Ins. Co. of N. Am.*, 2008 WL 8929013, at *7 (S.D. Cal. July 8, 2008) ("By investigating the policy documents, [plaintiff] would not have necessarily understood all the specific facts supporting his fraud claim, but he would have been put on notice that something was amiss regarding [alleged misstatements in a sales brochure].");  *see also  NYC Topanga, LLC v. Bank of Am.*, 2015 WL 4075844 (C.D. Cal. July 2, 2015) (finding the delayed discovery rule inapplicable where a plaintiff "executed [an] Agreement in June 2005," and was thus "on notice of its terms (and the alleged discrepancy [between the Agreement and the defendant's alleged oral representations]) as a matter of law at that time"); *Cabrera v. Countrywide Fin.*, 2012 WL 5372116, at *6 (N.D. Cal. Oct. 30, 2012) (finding that plaintiffs failed to allege sufficient facts to show that they were unable to discover an allegedly deceptive interest rate despite due diligence where "the face of the Construction Loan Note Addendum," received by the plaintiffs, explicitly stated the allegedly hidden true interest rate).

Plaintiff's failure to read the Policy Documents was especially unreasonable in light of the language of the Solicitation itself, which stated (1) "This is only a brief description of the coverage available under the Policy . . . .  If there is any conflict between the contents of this document and the Policy, the Policy shall govern" and (2) "You'll have 30 days to review your insurance documents.

---

[2] Plaintiff's Opposition suggests that she had a fiduciary relationship with Bank of America, and states that "in cases involving a fiduciary relationship, '[f]acts which would ordinarily require investigation may not excite suspicion, and [] the same degree of diligence is not required.'"  (Opp'n at 20 (quoting *Alfaro v. Cmty. Hous. Improvement Sys. & Planning Ass'n*, 171 Cal. App. 4th 1356, 1394 (2009)).)  The Complaint fails to present any non-conclusory allegations to sufficiently establish the existence of such a fiduciary relationship.  Moreover, even assuming that such a fiduciary relationship did exist, "[a] person in a fiduciary relationship may relax, but not fall asleep," and "[i]f she bec[omes] aware of facts which would make a reasonably prudent person suspicious, she ha[s] a duty to investigate further, and she [is] charged with knowledge of matters which [are] revealed by such an investigation." *Alfaro*, 171 Cal. App. 4th at 1381 (internal quotation marks omitted); *see also Southwest 2, LLC v. First Am. Title Ins. Co.*, 240 Cal. App. 4th 148, 157 (2015) ("But, even assuming for the sake of argument that each of the respondents had a fiduciary duty to plaintiffs, this does not mean that plaintiffs had no duty of inquiry if they were put on notice of a breach of such duty.").

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-5590-GHK (FFMx) | Date | October 28, 2015 |
|---|---|---|---|

| Title | *Emma Viera v. Bank of America, N.A., et al.* |
|---|---|

Simply return them for a full refund of any premiums and fees you may have paid if you're not 100% satisfied with the terms of this coverage." (Compl., Ex. A.) Such statements not only alerted Plaintiff that the Policy Documents themselves were the ultimate sources to reference to ascertain the scope of the Policy's coverage, but also affirmatively encouraged Plaintiff to review the Policy Documents to ensure that she was "100% satisfied with the terms of [the] coverage." (*See id.*)

Plaintiff argues that, even though she received the Policy Documents in May 2009, the Policy Documents' description of coverage was "unclear, ambiguous and inconspicuous." (Opp'n at 22.) Plaintiff asserts that she was unable to discover the alleged misrepresentations because the Policy Documents were "lengthy document[s] filled with small print and overwhelming legalese," such that the "minor change" to the rephrasing of the "Permanently Totally Disabled / Permanent Total Disability" definition was "unlikely to trigger concern or even be noticed." (*See* Compl. ¶ 33.) This argument is unpersuasive. While the Complaint summarily concludes that the document was "lengthy" and "filled with small print and overwhelming legalese," (*id.*), it does not specifically articulate facts supporting this conclusion. Indeed, as Defendants mention, the Complaint does not even include the entirety of the Policy Documents as an exhibit, and thus we are unable to evaluate this argument.

But even assuming the Complaint did allege facts to support this allegation, it still would not sufficiently show Plaintiff's "inability to have made earlier discovery despite reasonable diligence." *See E-Fab, Inc.*, 153 Cal. App. 4th at 1319. Because the Complaint does not assert that Plaintiff even attempted to read the Policy Documents, the Policy Documents' purported confusing language and structure did not cause Plaintiff's inability to detect the alleged misrepresentation of the Solicitation. Moreover, even assuming Plaintiff did read the Policy Documents, Plaintiff still would have had "reason at least to suspect a factual basis for its elements," *Norget*, 21 Cal. 4th at 398, even if Plaintiff would not have "been aware of the specific 'facts' necessary to establish the claim," due to the Policy's allegedly confusing language and structure, *see Jolly*, 44 Cal. 3d at 1111; *Iorio*, 2008 WL 8929013, at *7 (finding that, "[b]y investigating the policy documents, a [plaintiff] would not have necessarily understood all the specific facts supporting his fraud claim, but he would have been put on notice that something was amiss regarding" alleged misrepresentations in a sales brochure despite the policy document being "hardly a model of clear language").

Plaintiff also notes that a National Union representative erroneously told her that, to qualify under the Policy, "she was required to be under the care of a state physician, and she was required to be pronounced disabled by the State of California." (*Id.* ¶ 39.) The Complaint states that the representative "at no time . . . state[d] or impl[ied] that Plaintiff's back injury was not a qualifying injury under the Policy." (*Id.*) Further the Complaint shows that "Plaintiff attempted to contact a representative from National Union to clarify the requirements of the Policy," but was unable to "subsequently speak with a representative about the Policy," and thus "took no further action to claim the benefits of the Policy at that time." (*Id.* ¶ 40-42.) Plaintiff argues that these allegations establish that Defendants "led Plaintiff to believe she could qualify for coverage as long as she was pronounced disabled by the State of California," which suggested to her that "her disability qualified for coverage under the policy," and that "she had no reason to further analyze the policy language." (Opp'n at 23.) "[T]he actions of Defendants' agent, far from triggering Plaintiff's review of the Policy as suggested by Defendants,"

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-5590-GHK (FFMx) | Date | October 28, 2015 |
|---|---|---|---|

| Title | *Emma Viera v. Bank of America, N.A., et al.* |
|---|---|

Plaintiff asserts, "had the reverse effect of assuaging any concerns Plaintiff may have had regarding the scope of her coverage and dissuading Plaintiff from further review/action." (*Id.* at 23-24.)

The Complaint contradicts this argument. It states that, after receiving these alleged misrepresentations in December 2009, Plaintiff "attempted to contact a representative of National Union to clarify the requirements of the Policy" between "January and March of 2010." (Compl. ¶ 40.) This suggests that, after learning of the alleged misrepresentations from Defendants' agent, Plaintiff was not "assuage[d] [of] any concerns [she] may have had regarding the scope of her coverage," (Opp'n at 23-24.), but was actually seeking "to clarify the requirements of the Policy," (Compl. ¶ 40). As explained above, reasonable diligence would require Plaintiff to also read the Policy Documents in her attempt to determine the Policy's actual scope.

In sum, the Complaint shows that Plaintiff had "notice [and] information of circumstances to put a reasonable person on inquiry" of Defendants' alleged misrepresentations in 2009. *See Jolly*, 44 Cal. 3d at 1110-11 (internal quotation marks and citations omitted). Thus, Plaintiff insufficiently pleaded facts to show her inability to have made earlier discovery despite reasonable diligence, and accordingly the delayed discovery rule does not toll the statutes of limitations for Plaintiff's claims.

### 2.    Fraudulent Concealment

"The doctrine of fraudulent concealment tolls the statute of limitations where a defendant, through deceptive conduct, has caused a claim to grow stale." *Aryeh*, 55 Cal. 4th at 1192. "In order to establish fraudulent concealment, the complaint must show: (1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Baker v. Beech Aircraft Corp.*, 39 Cal. App. 3d 315, 321 (1974). "In urging lack of means of obtaining knowledge, it must be shown that in the exercise of reasonable diligence the facts could not have been discovered at an earlier date." *Id.* "[N]ondisclosure is not fraudulent concealment—affirmative deceptive conduct is required." *Long v. Walt Disney Co.*, 116 Cal. App. 4th 868, 874 (2004). "[A] claim that fraudulent concealment tolls an applicable state statute of limitations must be pled with particularity under Rule 9(b)." *Herremans*, 2014 WL 5017843, at *6.

To establish fraudulent concealment, Plaintiff first points to her December 2009 call to National Union where "National Union's representative held himself out as knowledgeable of the Policy," but "at no time did the representative state or imply that Plaintiff's back injury was not a qualifying injury under the Policy." (Compl. ¶ 39.) Plaintiff argues that "if in 2009, Plaintiff had been properly advised by the National Union [r]epresentative that she was not eligible for coverage under the policy, she would have filed this litigation at that time." (Opp'n at 25.) As Plaintiff herself acknowledges, the fraudulent concealment doctrine is "properly invoked if a plaintiff establishes affirmative conduct upon the part of the defendant." (*See id.* at 24 (internal quotation marks omitted)); *see also Long*, 116 Cal. App. 4th at 874. The National Union representative's failure to inform Plaintiff that her injury did not fit the Policy's definition of a Permanent Total Disability, however, is mere nondisclosure, which does not suffice to establish fraudulent concealment.

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-5590-GHK (FFMx) | Date | October 28, 2015 |
|---|---|---|---|
| Title | *Emma Viera v. Bank of America, N.A., et al.* | | |

Plaintiff also points to the Complaint's allegation that "the National Union representative falsely told Plaintiff that being under the care of just a licensed physician was insufficient" for coverage under the Policy. (Compl. ¶ 39.) The Complaint further asserts that "Plaintiff relied on these misrepresentations in her efforts to pursue the benefits of the Policy," and that "Plaintiff took no further action to claim benefits of the Policy at that time." (*Id.* ¶¶ 39, 42.) These allegations also do not establish fraudulent concealment. Even assuming that this misstatement did cause Plaintiff to delay in bringing her claims, the Complaint does not show that "in the exercise of reasonable diligence the facts could not have been discovered at an earlier date." *See Baker*, 39 Cal. App. 3d at 321. The alleged fraudulent statement is that a "National Union representative falsely told Plaintiff that being under the care of just a licensed physician was insufficient" for coverage under the Policy. (Compl. ¶ 39.) The Complaint's allegations reveal that this erroneous requirement was in neither the Solicitation nor the Policy Documents. (*See* Compl. ¶¶ 25-26, 32.) The Complaint alleges, however, that, as early as April 2009, Plaintiff had based her understanding of the Policy's coverage on the Solicitation. (*See* Compl. ¶ 30.) Thus, at the very least, the Solicitation gave Plaintiff notice that the National Union agent's affirmative representation about the Policy was false. Accordingly, Plaintiff had notice of facts sufficient to put her on inquiry of the alleged fraud, meaning the fraudulent concealment doctrine is inapplicable.

Plaintiff has therefore failed to establish the applicability of the fraudulent concealment doctrine, and thus we decline to toll the statute of limitations for this reason.

**III.    Conclusion**

Ultimately, Plaintiff has not shown facts to warrant exceptions to the normal statutes of limitations for her claims. Her claims are therefore time-barred, as explained above. Accordingly, Defendants' Motion is **GRANTED**, and all of Plaintiff's claims are **DISMISSED with leave to amend**. While it is unclear if Plaintiff can successfully amend her Complaint to avoid future dismissal on this statute of limitations issue, we choose to give Plaintiff the opportunity to do so.[3] Should Plaintiff elect to file an Amended Complaint, she **SHALL** do so within **30 days hereof**. Plaintiff's failure to file an Amended Complaint will be deemed her admission that amendment is futile, and in that event, this action will be dismissed with prejudice. If Plaintiff does file an Amended Complaint, all Defendants **SHALL** respond to it within **30 days thereafter**.

We caution Plaintiff's counsel that any future Amended Complaint must be made consistent with the obligations under Federal Rule of Civil Procedure 11, which provides in pertinent part:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

---

[3] Plaintiff should include the entirety of the Policy Documents in any Amended Complaint.

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-5590-GHK (FFMx) | Date | October 28, 2015 |
|---|---|---|---|
| Title | *Emma Viera v. Bank of America, N.A., et al.* | | |

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

**IT IS SO ORDERED.**

_         :  --

Initials of Deputy Clerk          Bea